# COURT OF APPEALS.

JOHN TRACY, JR., appellant agt. SAMUEL CORSE, respondent.

Whatever may be the true view as to the time when a forfeiture takes place under the internal revenue acts, it is by the judgment alone of the courts in which the forfeiture is sought to be enforced that it can be ascertained and determined.

If the government may be deemed to have an inchoate title from the time the offense is committed, it is not consummated until after a judicial condemnation.

If, after a seizure, the possession is abandoned by the government, and a decree of forfeiture is not obtained, the title and the right of possession is in the original owner.

A collector of internal revenue under that part of the provisions of section 48 of the act of Congress of June 30th, 1864, as amended by the ninth section of the act of July 13th, 1866, authorizing the sale of property seized when it may be liable to perish, or become greatly reduced in value by keeping, or when it cannot be kept without great expense, has no power, although he takes the proceedings provided for in that act, to sell a barge or vessel as perishable.

A barge is not an object or thing upon which a tax was liable to be imposed, nor was it a tool, implement or instrument within the meaning of that section. The sale provided for in the forty-eighth section is a sale of property liable to seizure under that section.

The power of sale conferred upon a collector is ministerial, and not judicial; and a sale made by a collector in a case not within the statute neither divests or confers any title. As between a purchaser under such a sale and a party acquiring the title from the owner, the latter's title must prevail.

A subsequent decree of condemnation of the proceeds of the collector's sale, by the United States district court, cannot affect the title of those claiming under the original owner when the barge was not in the custody of the court at the time of the decree.

There are two reasons for not giving such a decree the effect claimed for it:

*First.* The court pronouncing it did not have the custody of the barge, nor was it subject to its process, and the decree does not adjudicate directly that it was forfeited.

Tracy agt. Corse.

*Second.* The only persons summoned or notified by the marshal to appear were those claiming an interest in the proceeds of the collector's sale.
The general principle is well established, that a court proceeding *in rem* must have the custody of the *res* in order to pronounce a valid judgment.

*Before justices* CHURCH, GROVER, RAPALLO, ANDREWS, JOHNSON, ALLEN *and* FOLGER.

CUNNINGHAM & TOMPKINS, owners of a barge called the Franklin, for the consideration of $2,500, sold the said vessel to one Roach. Roach, simultaneously therewith, gave back two notes, dated May 11, 1868, for $1,000 each, payable one at six months and one at twelve months after date (for part of the purchase-money), and, to secure said notes, executed a chattel mortgage on the said barge, recorded in the New York custom-house on May 12, 1868.

This mortgage contained a provision that, "In·case of default in payment, it should be lawful for the mortgagees to enter into and upon the said vessel, in any dock or waters· she might be, and to take and carry her away, and to sell and dispose of her at public or private sale, for the best price they might obtain. And the mortgagees were empowered to become the purchaser or purchasers at such sale, and to execute and deliver the necessary bills of sale to the purchaser thereof," &c.

When the first of these notes became due, it was unpaid, and on the 24th December, 1868, the mortgagees executed a power of attorney to a sheriff — the vessel at that time.lying in Jersey waters — to seize and sell the said barge under the mortgage, because of the default in payment of the first of said notes.

Under the said mortgage and power, the attorney took possession of the barge, advertised her for sale in the *Hudson County Democrat*, and sold her as she lay, in Jersey City, to the highest bidder, and Samuel Corse, the respondent, bought her in for $1,650 cash, and thereupon the said attorney for

the mortgagees executed a bill of sale to the respondent recit-
ing the mortgagees' proceedings and sale.

Mr. Corse took possession of the barge and commenced
improvements on her, and while so in possession of her, the
appellant brought an action to test the title by claim and
delivery.

And it is on issues joined in that suit that the cause below
was tried.

On the trial the jury found the value of the vessel at
$2,500, and damages for its detention, $549.30 ; and the jus-
tice ordered the verdict to be entered for the defendant but
judgment to be suspended, to enable the exceptions to be
heard in the first instance at the general term.    The general
term affirmed, judge LEARNED delivering the opinion ; from
which appeal is now taken to this court.

The appellant's case was founded on a title acquired by
him under this state of facts, viz. :

John Tracy, the appellant, bought the vessel in question
on the 3d of August, 1868, at a sale made by Alexander
Spaulding, United States collector of internal revenue, for
the sum of $1,000.    The bill of sale by Spaulding, the col-
lector, to Tracy, recited that on June 2d, 1868, he caused the
barge Franklin (of 160 tons burden) to be seized opposite
Weehawken, in the North river, she being at that time fitted
up for, and actually engaged in, the business of illicitly
manufacturing spirits, in violation of internal revenue laws.
That the said barge was, by order of said collector, moored
to the dock, foot of Thirty-first street, city of New York,
and placed in charge of a keeper, and that the expense of
keeping her was very great ; and in consideration thereof,
the said collector applied to Anthony J. Bleecker, assessor,
on June 22d, 1868, to have said barge appraised.    That on
June 26th, 1868, said Bleecker appraised said barge.    That
on June 27th, the collector notified the owner or owners of
said barge to execute a bond equal to assessed value, on or
before July 1st, 1868, which they neglected and refused to

do. On July 9th, 1868, said collector applied by letter to Thomas B. Asten, successor in office to Anthony J. Bleecker, for an order to sell said barge on the 10th July, 1868, Asten, assessor of said district, issued an order authorizing collector Spaulding to sell the barge and he, the collector, duly advertised her at public auction, and on 3d of August, 1868, to which day the sale was adjourned, it was sold to John Tracy, Jr., for $1,000.

No proof was introduced on the trial below of the facts stated in such recital, other than the correspondence between the collector and the assessor, and an information filed in the United States district court, at the suit of the United States, by the United States district attorney, against $618.20, the proceeds of a quantity of distilled spirits, of one still and other distilling apparatus, of certain articles of raw materials, and certain tools, vessels, utensils, implements, instruments, &c., and of the barge Franklin.

This information was filed on the 22d day of December, 1868, and process issued thereon against that money, returnable January 12th, 1869. Under that process the marshal impounded the said $618.30, and made return on January 29th, 1869, which was some time after the respondent acquired his title. A final decree was entered on that information, adjudicating on and forfeiting the $618.30, and confirming said sale. But the respondent was no party to said suit, nor did the United States authorities, on that information, seize or hold in possession the " *rem*," viz., the barge Franklin, which was in dispute, and all of said proceedings were unknown to the respondent.

*A. H. Dana*, for appellant.

I. The proceedings by the collector against the vessel and the decree of the district court United States of forfeiture, are conclusive, and cannot be questioned in this action.

1. The seizure by the collector was based upon revenue

Tracy agt. Corse.

laws of United States, as follows: Law of 1864, section 48 (2 *Brightly's Dig.*, 307): All goods and articles or objects subject to taxes which are being sold or removed in fraud of revenue laws, or with design to avoid payment of taxes, may be seized by the collector of the district, and shall be forfeited to the United States; so also all raw materials to be manufactured and sold with design to evade the payment of such taxes, and all personal property within the yard or inclosure where such materials shall be found. Such forfeiture to be enforced by a proceeding *in rem* in .the circuit or district court United States. If the property is perishable it shall be appraised by the assessor, and, if a bond be not given by the owner, may be ordered by the assessor to be sold. Law of 1866, section 14 (2 *Brightly*, 310): · Any goods, &c., upon which a tax is imposed, or any materials, utensils, or vessels to be used in the making of such goods, &c., that shall be removed or concealed with intent to avoid the tax, and any vessel, boat, carriage, horses, &c., used for such removal or concealment, to be .forfeited (*See, also, Law of* 1868, *sec.* 5 [2 *Brightly*, 326]; *Law of* 1864, *sec.* 179 [2 *Brightly*, 306]). Collectors, in their respective districts, authorized to prosecute forfeitures in the name of the United States.

The distillery apparatus was subject to seizure under the law of 1864. The vessel was connected with and formed a part of the distillery. It was in fact the outer structure, or frame and environment, of the apparatus. It is embraced within the terms "personal property within the inclosure," as used in the same section of the statute of 1864. Again, the vessel was within the express terms of the statute of 1866, "any vessel, boat, carriage, &c., used for such removal or concealment."

2. When forfeiture is declared by statute of United States for an offense, it attaches *in rem* from the time the offense is committed, and the right of property is immediately divested. The final decree relates back to the original offense, and is conclusive of the whole subject, and paramount to any adju-

dication of a state court (*Slocum* agt. *Mayberry*, 2 *Wheat.*, 1; *Gelston* agt. *Hoyt,* 3 *Wheat.*, 246).

3. No change, therefore, in the rights or interests of parties subsequent to the seizure, can have any effect as against the government.

So, also, it is held that all interests existing at the time of such seizure, are subject to the forfeiture that may be finally decreed.

The right of the government is superior to that of a prior mortgagee out of possession (*U. S.* agt. *Distilled Spirits*, 8 *Internal Revenue Rep.*, 81; *U. S.* agt. *56 bbls. of whiskey*, 1 *Abb.* [*U. S.*], 93).

Hired utensils, machinery, boats or other personal property are equally subject to the penalty, as if the person using them should be the absolute owner (*U. S.* agt. 33 *bbls. spirits*, 1 *Abb.* [*U. S.*], 311; *The Governor Cushman*, 1 *Abb.* [*U. S.*], 14).

4. After the seizure, the possession of the government cannot be interfered with by any claimant, and if a sale shall be ordered under the provisions of the law before referred to, the purchaser takes the title divested of the claims of all parties.

5. The regularity of the seizure or proceedings thereupon, until final decree, cannot be questioned in any other court.

When jurisdiction has once attached, the decision of every question in the case, whether correct or incorrect, is binding upon every other court until reversed.

Errors or irregularities in such cases can be corrected only by some direct proceeding before the same court to set them aside, or by appeal to a superior court (*Elliott* agt. *Piersol*, 1 *Peters*, 328; *Thompson* agt. *Tolme*, 2 *id.*, 157; *Tolme* agt. *Thompson*, 3 *Cranch, Cir. C.*, 123).

Acts purporting to be done by public officers in their official capacity, will be presumed regular, until the contrary appears. The burden of proof is upon the contestant (*U. S.* agt. *Arredondo*, 6 *Pet.*, 691; *Delassus* agt. *U. S.*, 9 *id.*, 117;

*Strothers* agt. *Lucas*, 12 *id.*, 410; *Phil. & T. R. R.* agt. *Stimpson*, 14 *id.*, 418; *Wood* agt. *U. S.*, 16 *id.*, 342; *Taylor* agt. *U. S.*, 3 *How.* [*U. S.*], 197; *Minter* agt. *Crommeline*, 18 *id.*, 87).

In a proceeding for forfeiture, it makes no difference what the original ground of seizure may have been, nor whether irregularly made ; the ultimate decision that there was cause of seizure is conclusive ( *Wood* agt. *U. S.*, 16 *Pet.*, 342, *supra ; Taylor* agt. *U. S.*, 3 *How.* [*U. S.*], 197, *supra*).

In the present case, the seizure being adopted by the U. S., the decree relates back to the original seizure and overreaches all irregularities if there had been any, including any informality in the sale of the vessel.  But no such formality is to be presumed.  It should have been proved by the claimant. Again, the decree is effectual as against the vessel itself, and all interests attaching thereto.  The loss of possession after seizure does not divest jurisdiction ( *U. S.* agt. *Little Charles*, 1 *Brock.*, *Marsh*, 347)

To the same effect are the decisions of our state courts (*D'Ivernois* agt. *Leavitt*, 8 *Abb.*, 59; *Chemung Canal Bank* agt. *Judson*, 8 *N. Y.*, 254).

So held as to statutory appointment of a receiver under the statute (3 *R. S.*, 763, *sec.* 36 [*5th ed.*] ; *Bangs* agt. *Duckenfield*, 18 *N. Y.*, 592).

So also in insolvent proceedings (*Rusher* agt. *Sherman*, 28 *Barb.*, 416; *People* agt. *Stryker*, 24 *id.*, 649 ; *Stanton* agt. *Ellis*, 2 *Kern.*, 575).

So in a justice court (*Prince* agt. *Peters*, 15 *Abb.*, 197).

II. Applying to the case before the court, the following propositions are sustainable :

1. The seizure on the 2d of June, 1868, divested all legal right, of all parties, subject only to the final decree to be made in respect thereto.

2. The act of the collector was the inception of the proceeding *in rem* for the enforcing of the forfeiture.  The

validity and effect of this act are exclusively determinable by the courts of the United States.

3. The decree based upon the seizure and subsequent proceedings is conclusive in respect thereto.

4. What notice should be given to a claimant on application for sale of the thing seized as perishable, and what should be the proof of such notice, were matters of practice, which being adjudicated, could not be questioned except by appeal from the decision.

The court having held that the return made by the collector was sufficient proof of the notice required by statute, it cannot be allowed collaterally to impeach the decision.

5. Neither is it admissible to question that the parties interested in the vessel, which was sold, were sufficiently before the court. The proceeding being *in rem*, personal service of process is not, *per se*, necessary unless prescribed by statute. The seizure and possession thereafter constituted a visible notice to all who were previously in possession. According to the return of the marshal, due notice was given to all persons claiming the proceeds of the vessel. If this was a false return, any party damnified thereby could have had relief on application to the court at any time thereafter when the act complained of was discovered. And so also in respect to the omission of any notice supposed to be required by statute for the purpose of sale.

6. But relief could be had only in that court, not in another, leaving this proceeding and the decision thereon unrevoked.

But the parties claiming the vessel chose to repudiate wholly all regard to the proceedings by the collector and United States court, retook possession of the vessel after sale by the collector, and attempted a removal of it out of the jurisdiction of that court, and now, when possession is reclaimed by the purchaser at the collector's sale, it is set up in answer that the whole proceeding, seizure, sale and adjudication of the United States court are a nullity.

7. The sale of the vessel on the 3d of August, 1869, vested an absolute title in the purchaser upon the affirmance thereof by the decree, and in the mean time the purchaser had the right of possession.

8. Again, if any question could be made as to the sale, the possession of the vessel would have rightfully remained with the collector, and he could have replevied it, if taken at any time before the decree; then on affirmance of the seizure all title of the claimants would have been extinguished, could defendant against such a decree have maintained any right of possession ?

9. The retaking possession by Cunningham & Tompkins from plaintiff was wrongful, and plaintiff had a right of action without waiting for the decree.

10. The purchaser at the pretended sale under the mortgage of Cunningham & Tompkins, acquired no right even if it should be conceded that the mortgage was *bona fide.* The final decree, establishing the validity of the seizure and sale, is conclusive against Cunningham & Tompkins as mortgagees, and defendant as purchaser at the mortgage sale.

*D. McMahon*, for respondent.

I. The sale by the collector, Spaulding, of the barge Franklin, on the ground of her being perishable, to wit, that the expenses of keeping her were very considerable, was absolutely without authority of law, and void, and conveyed no title to the appellant.

1. The ninth section of the act of Congress, July 13, 1866 (14 *Stat. at Large, p.* 112), amending what was originally section 48 of the act of June 30, 1864 (13 *Stat. at Large, p.* 238), under which it can only be claimed to have been made, and under which it was avowedly made, contains this proviso, namely:

" Provided, that when the property so seized may be liable to perish, or become greatly reduced in price or value by keeping, or when it cannot be kept without great expense,

the owner thereof, the collector, or the marshal of the district, may apply to the assessor of the district to examine said property, and if, in the opinion of said assessor, it shall be necessary that the said property shall be sold to prevent such waste or expense, he shall appraise the same, and the owner thereupon shall have said property returned to him upon giving bond in such form as may be prescribed by the commissioner of internal revenue, and in an amount equal to the appraised value, with such sureties as the said assessor shall deem good and sufficient, to abide the final order, decree, or judgment of the court having cognizance of the case, and to pay the amount of said appraised value to the collector, marshal, or otherwise, as he may be ordered and directed by the court," which bond shall be filed by said assessor with the United States district attorney for the district in which said proceedings *in rem* may be commenced.

"Provided, further," etc., etc.

"But if said owner shall neglect or refuse to give said bond, the assessor shall issue to the collector or marshal aforesaid an order to sell the same, and the said collector or marshal shall thereupon advertise and sell the said property at public auction, in the same manner as goods may be sold on final execution, in said district, and the proceeds of the sale, after deducting the reasonable costs of the seizure and sale, shall be paid to the court aforesaid, to abide its final order, decree or judgment."

On looking at the first part of that section, the amendment of section 48, contained in it, it will be found that the property therein referred to are "goods, wares, merchandise, articles or objects on which taxes are imposed by the provisions of law, which are found in the possession of, or within the control of, any person for the purpose of being sold or removed by such persons in fraud of the internal revenue laws, or with design to avoid payment of such taxes" (*By the act of July, 13, 1866, § 10, 14th Stat. at Large, 148, hulls of ships and other vessels are exempted from taxation*).

Tracy agt. Corse.

" Also, all raw materials " (this does not include the barge in question); also, all tools, implements, instruments and personal property whatsoever, in the place, or building, or within any yard, or inclosure where such articles, or such raw material shall be found" (P. S., this cannot include the barge in question), may also be seized by any collector or deputy-collector as aforesaid. And the same shall be forfeited as aforesaid, and the proceedings to enforce such forfeiture shall be in the nature of a proceeding *in rem* in the circuit or district court of the United States for the district where such seizure is made, or in any other court of competent jurisdiction."

It is evident, therefore, from reading that section, that it was not intended to authorize the sale, as perishable, of the house, the yard, or the inclosure, nor the vessel where the illicit business was carried on, but only the goods liable to taxation, the raw material and the tools and implements of distillation on the vessel, and nothing more. Consequently, the provisions as to selling as perishable did not apply to a vessel that was seized.

2. The appellant below introduced no proof of any of the proceedings under which Tracy claimed title. He relied on the papers on file, which were put on the file *ex parte*, after the seizure and sale on the purchase-money mortgage, under which the respondent drew title; the dates of Spaulding's affidavit, and the filing of the order of sale, and of the decree itself, are about the 29th of January, 1869, long after the seizure and sale by the purchase-money mortgagee, and of the decree, shows that the same was made, not on legal evidence, but on the *ex parte* report of the collector and the affidavits and papers filed therewith, and these reports and papers were not a compliance with the law.

II. The decree of the United States district court affirming that sale was not *res adjudicata* upon the right of appellant to the barge Franklin.

1. It had been rendered after the seizure of and sale by the

mortgagee, and the respondent's (a *bona fide* purchaser's) right had intervened, and no notice given to such *bona fide* purchaser of any of the proceedings.

The *rem* (*i. e.*, the barge) was not in the custody of the United States court or its marshal, and never had been. The only proceeding in court of a judicial character was an information filed on the 22d day of December, 1868, by the United States district attorney, over five months after the sale, seeking to confiscate "$618.30, proceeds of a quantity of distilled spirits, one still and other distilling apparatus, certain articles of raw material, and certain tools, vessels, utensils, implements, &c., &c., and the barge Franklin." Upon that information, a monition had been issued on 22d December, 1868, to the marshal of New York, to seize said $618.30 on 12th January, 1869, which was after the purchase by the respondent. The marshal made return of seizure of the $618.30, and upon that return, without any seizure or actual custody of the barge, the court proceed and make the condemnation of the $618.30.

2. A condemnation of a *rem* by a court of exclusive jurisdiction, to be binding on all the world, must be upon actual custody of the "*rem*," or upon personal service of the owner (*The Mary*, 9 *Cranch*, 126, 144).

3. A distinction must be made between the effect of the condemnation, so far as regards the $618.30, the proceeds of sale, which were before the court, and the barge itself, which was not in custody. In the former case, the funds being in court, the decree might be conclusive, in the latter not at all.

III. The sale herein sought to be made effective was not a sale made under the order of a court of exclusive jurisdiction, but only of certain officials, armed with a limited and temporary authority, and no court of competent jurisdiction could confirm or make valid that sale, so as to affect the rights of *bona fide* purchasers, without notice to, or appearance by, the party whose rights were affected.

Tracy agt. Corse.

The objections taken to the introduction of that record and to its effect, by the respondent's counsel, were valid.

1. The proceedings (as proven) of the collector and assessor were wholly defective.

2. The intent of the revenue acts was to condemn the goods liable to taxation, and the distilling apparatus which made them. Never to condemn and forfeit the right of property of third parties in a house, a lot of ground or a vessel, in which the work was done. This is evident from the words of the act " *in pari materia* " on the subject of real estate (*Act of July* 13, 1866, *sec.* 9; *United States* agt. *One Water Cask,* 10 *Int. Rev., p.* 93; 14 *Stat. at Large, p.* 107, *also* 109).

On the subject of forfeiture of stills and apparatus (*see* 14 *Stat. at Large, p.* 248, 25 *sec. of act of* 1867), which is substantially a re-enactment of the sixty-eighth section of the act of June 30, 1864 (13 *Stat at Large, p.* 248), and in which it is provided that unlawful acts, &c., shall, when committed by the owner, agent or superintendent of any still, boiler or other vessel used in distillation, work a forfeiture of all the spirits made, by or for him, and all the vessels used in making the same, and the still, boiler and other vessels used in the distillation, and all materials fit for use in distillation on the premises.

3. Moreover, forfeitures do not override vested *bona fide* liens (*St. Jago de Cuba,* 9 *Wheat.,* 209; *The Florence,* 1 *Blatch. & H., p.* 52), or affect the rights of *bona fide* purchasers (*U. S.* agt. 100 *Barrels, &c.,* 2 *Abb.* [ *U. S.*] *Reps., p.* 305; *U. S.* agt. 33 *Barrels of Spirits,* 1 *Abb.* [ *U. S.*] *Reps., p.* 311; *U. S.* agt. 396 *Barrels,* 3 *Int. Rev. Rec.,* 123).

4. The jurisdiction of any court exercising authority over a subject may be inquired into in every court where the proceedings of the former are relied on, and brought before the latter by the party claiming the benefit of such proceedings (*Chemung Canal Bank* agt. *Judson,* 8 *N. Y. R.,* 254; *Dobson* agt. *Pearce,* 12 *N. Y. R.,* 156).

IV. The act under which the barge Franklin was sold, as perishable, viz., July 13th, 1866, section 9, was repealed by section 105 of act 1868, July.

The sale by the collector took place on August 3d, 1868, which was after the repealing act took effect.

A sentence of condemnation cannot be affirmed if the law under which the forfeiture has occurred has expired; although a condemnation and sale had taken place, and the money had been paid over to the United States before the law had expired (*The Rachel* agt. *The United States*, 6 *Cranch*, 329).

The opinion of the court was delivered by ANDREWS, *J.*

The plaintiff claims title to the barge "Franklin" as purchased at a sale at public auction, made in the city of New York, August 2d, 1868, by one Alexander Spaulding, a collector of internal revenue, by whom the barge, in June previous, had been seized for an alleged forfeiture incurred under the internal revenue law of the United States, in that she was at the time of the seizure fitted up and used in the business of the illicit manufacture of spirits.

The collector assumed to act, in making the sale, under the authority conferred by the forty-eighth section of the act of Congress relating to internal revenue, passed June 30th, 1864, as amended by the ninth section of the act of July 13th 1866. That section declares that the collector or deputy collector of internal revenue may seize any goods, articles or objects on which taxes are imposed by law, found in the possession or within the control of any person in fraud of the internal revenue laws, or with design to avoid the payment of taxes, and that the same shall be forfeited to the United States, and also all raw materials found in the possession of any person under the circumstances specified in the statute, "and all tools, implements, instruments of personal property whatsoever in the place or building, or within any yard or inclosure, where such articles or such raw materials shall be found." The section also provides that proceedings to

enforce the forfeiture shall be in the nature of a proceeding *in rem* in the circuit or district court of the United States where the seizure is made, or in any other court of competent jurisdiction. The articles seized, the section declares, may at the option of the collector be delivered to the marshal of the district, and shall remain in his care and custody until he shall obtain possession by process of law ; but a proviso is made, that when the property so seized may be liable to perish, or become greatly reduced in value by keeping, or when it cannot be kept without great expense, a sale may be had on the application of the collector to the assessors and upon the proceedings being taken as provided in the section ; and the proceeds of the sale, after deducting costs of the seizure and the sale, are to be paid into court to abide its final order, decree or judgment. It is quite obvious, I think, that the sale of the barge was not authorized by the section of the statute. It was not liable to seizure under it. It was not an object or thing upon which a tax was imposed, nor was it a tool, implement or instrument within the meaning of the statute.

The sale provided for in the forty-eighth section is a sale of property liable to seizure under that section. The barge, perhaps, was liable to seizure under the fourteenth section of the act of 1866, as a vessel used for the deposit or concealment of taxable articles in fraud of the statute, but this does not appear to have been the ground of seizure, and if it had been the collector is only authorized to make a summary sale of property seized in the cases mentioned in the forty-eighth section. The sale was therefore void. The power of sale conferred upon a collector is ministerial and not judicial, and a sale made by a collector in a case not within the statute neither divests nor confers any title. It is to be assumed, in view of the proof offered on the trial and rejected, that the barge was liable to forfeiture when the seizure was made, and that the seizure was lawful. But the title of the owner of property to which an act of forfeiture has been committed

under the internal revenue laws is not divested *eo instanti* upon the commission of the offense, or by the seizure, but by the judgment or decree of a court, having jurisdiction in the premises, ascertaining and declaring the forfeiture. It is true that the statute declares that property under certain circumstances shall be forfeited, but it also provides that proceedings to enforce the forfeiture shall be taken in the courts of the United States. Whatever may be the true view as to the time when the forfeiture takes place, it is by the judgment alone that it can be ascertained and determined. If the government may be deemed to have an inchoate title from the time the offense is committed, it is not consummated until after a judicial condemnation; and if after a seizure the possession is abandoned by the government, and a decree of forfeiture is not obtained, the title and the right of possession is in the original owner. This is, I think, a fair deduction from the authorities (*Slocum* agt. *Maybery,* 2 *Wheat.,* 1; *Gilston* agt. *Hoyt,* 4 *id.,* 246; *U. S.* agt. *Grundy,* 3 *Cr.,* 350; *Same* agt. 1,960 *bags of coffee,* 8 *id.,* 398; *Caldwell* agt. *U. S.,* 8 *How.,* 366, 381).

The defendant derives title from the person who owned the barge when the seizure was made. The plaintiff, as has been shown, acquired no title under the collector's sale. He cannot therefore recover possession of the barge from the defendant, unless he can show that that title has in some way been confirmed, and made conclusive upon the defendant.

The plaintiff, to establish this, produces in evidence the record of a decree of the district court of the United States for the southern district of New York, made January 29, 1869, in proceedings by information commenced in that court December 22d, 1868, against $618, alleged to be the proceeds of the barge "Franklin," &c. The information recited the seizure by the collector of the barge and also of a quantity of distilled spirits, as forfeited to the United States, and the special grounds upon which it was made, and it also alleged that the proceeds were in the custody of the collector and prayed pro-

cess of attachment to bring the property within the custody of the court and of monition to the parties interested, that due proceedings being had the barge and property might be condemned by decree of forfeiture and the proceeds distributed, &c.

The marshal, in his return of the monition, January 12, 1869, certifies that he had attached the proceeds therein described and had given due notice to all persons claiming the same, that the court on a day named would proceed to the trial and condemnation thereof, should no claim be interposed to the same. The decree recites the return of the monition, and that the default of all persons had been entered, and adjudges that the "$618, proceeds of the barge Franklin," &c., be condemned as forfeited. The decree then recites the seizure by the collector, and the sale to the plaintiff, and concludes by declaring and adjudging that the seizure and the sale and all proceedings therein be in all things confirmed.

This decree, it is insisted, conclusively establishes, against all the world, the forfeiture of the "Franklin" and the validity of the collector's sale. Without entering, to any considerable extent, into the difficult and perplexing bearing upon the subject of the estoppel of judgments, and the distinction between those *in rem* and *in personam*, there are, I think, two reasons against giving to this decree the effect claimed for it against the defendant:

First, the court pronouncing it did not have the custody of the barge, nor was it subject to its process and the decree does not adjudicate directly that it was forfeited; and, second, the only persons summoned or notified by the marshal to appear were those claiming an interest in the proceeds of the collector's sale. The collector on the sale delivered the barge to the plaintiff, and it was never afterward in the possession of the government, nor was it any time within the custody of the court.

The general principle is well established, that a court, proceeding *in rem*, must have the custody of the *res*, in order to

pronounce a valid judgment. The purpose of a proceeding *in rem* is to fix the *status* of the property or thing, which is the subject of the inquiry, irrevocably as to all the world, and to ascertain the right of all possible claimants, and possession of the thing by the court which pronounces upon it is in general indispensable (*The Josefa Segunda,* 10 *Wheat.,* 312 ; *Taylor* agt. *Carryl,* 20 *How.,* 599 ; *Jennings* agt. *Carson,* 4 *Cr.,* 2 ; *The Mary,* 9 *id.,* 144).

The defendant did not claim the proceeds of the sale of the barge. Such a claim was adverse to the title which he asserted. He had neither actual or constructive notice that the court claimed any jurisdiction, or would proceed to pronounce the forfeiture of the vessel, and indeed it did not do so. The judgment of the district court was conclusive on the question before it, viz., the ownership of the proceeds, and however essential it may have been in the determination of that question to pass upon the *status* of the barge, and its liability to forfeiture, the barge itself was not the *res,* and the title to it was not affected by the decree. That the proceeding is not *in rem* does not dispense with the rule of universal justice, that a party shall not be condemned without an opportunity to be heard. It is true that he is not entitled to personal notice before a court can adjudge the forfeiture of his property, but he must have notice, either actual or constructive, of the proceeding or it will be void. The custody of the *res* may be constructive notice that the court having possession will proceed to adjudicate upon it, and notice may be given in this way or by publication, according to the usual practice of the court, and then he is bound to defend or assert his rights, if he has any. Notice in this way may never in fact reach him. In many cases the giving of personal notice is impracticable, nor is it required, but the rule requiring notice either actual or constructive is fundamental and ought never to be departed from. The question as to who was entitled to the proceeds of the barge was one with which the defendant had no concern, if in fact, as he claimed, the sale from

Tracy agt. Corse.

which the proceeds came was void. He was not called upon to defend his title to the barge, under a proceeding to determine the right to the proceeds (*Bradstreet* agt. *Neptune Ins. Co.*, 3 *Sum.*, 607 ; *Lessee of Boswell* agt. *Dickerson*, 4 *Mc-Lean*, 267 ; *Woodruff* agt. *Taylor*, 20 *Vt.*, 65).

The judgment should be affirmed.

All concur.